UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
MAURA PARRISH,

              Plaintiff,

  -against-

AETNA LIFE INSURANCE
COMPANY,

             Defendants.

------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 1:17-cv-04837-FB-AKT

*Appearances*:
*For the Plaintiff*:
JASON A. NEWFIELD
JUSTIN C. FRANKEL
Frankel & Newfield, P.C.
585 Stewart Avenue, Suite 312
Garden City, NY 11530

*For the Defendant*:
PATRICK W. BEGOS
GREGORY JAMES BENNICI
SOO YEON KIM
Robinson & Cole LLP
1055 Washington Blvd.
Stamford, CT 06901

**BLOCK, Senior District Judge:**

      Pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), Maura Parrish ("Parrish") seeks judicial review of the denial of disability benefits under a policy administered by Aetna Life Insurance Company ("Aetna").

      District Courts may treat motions for judgment on the administrative record as a bench trial "on the papers" governed by Rule 52(a), under which the Court must "make explicit findings of fact and conclusions of law explaining the reasons

1

for its decision." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003); *see also O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011) (it is permissible for "parties [to] consent to a bench trial on the parties' submissions").

The Court has before it dueling motions for judgment on the administrative record. For the following reasons, Parrish's motion for judgment on the administrative record is denied, and Aetna's motion for judgment on the administrative record is granted.

## I. Findings of Fact

Parrish suffers from carpal tunnel syndrome, headaches, and pain in her neck, back, arms, and hands. Prior to the onset of symptoms, she worked in various jobs including "selling classifieds for a local paper," at a Madison Avenue advertising agency, at a magazine "produc[ing] small business expos," and in the event show business as a conference organizer. ECF No. 38-1 at 23. Former colleagues testified to her professional dedication and described her as "sharp, focused and detail oriented" and someone who former colleagues "always looked forward to working with." ECF No. 38-14 at 89. At the time she stopped working, Parrish was a forty-year-old "Sales Manager/National Sales Manager – Conferences" employed by Sourcemedia, Inc. *See* ECF No. 38-24 at 63. She stopped working in February 2013 and submitted a claim for disability benefits.

In March 2014, Aetna provisionally approved Parrish's claim, effective August 6, 2013, while it awaited receipt of additional information. Later, by letter to Parrish's counsel dated April 27, 2015, Aetna terminated Parrish's benefits effective April 28, 2015. Aetna's letter summarized the medical evidence – described at length below – including the reports by Dr. Goldman and Dr. Gorski. Aetna concluded that although Parrish had certain health issues, they did not prevent her from carrying out her occupational responsibilities.

Counsel for Parrish appealed the claim determination in a lengthy letter. After assessing the medical evidence and a transferable skills analysis and labor market survey, Aetna concluded that Parrish qualified for additional benefits to the end of the twenty-four-month "own occupation" period.[1] By letter to Parrish's counsel dated February 18, 2016, Aetna partly overturned its decision and approved benefits until August, 2015. However, Aetna concluded that benefits were not available after the own occupation period because Parrish had the ability to perform sedentary work.

Counsel for Parrish filed an appeal on August 9, 2016 challenging Aetna's determination that Parrish was not incapacitated from any reasonable occupation. After reviewing the medical and vocational evidence, Aetna issued a decision on

---

[1] The plan sets for a test for disability during the first 24 months in which the claimant "cannot perform the material duties of [their] own occupation solely because of an illness, injury or disability pregnancy-related condition." ECF No. 38 at 20

November 3, 2016 upholding its decision and finding that there were other occupations Parrish could perform.

During this protracted dispute between Aetna and Parrish, Parrish was approved for social security disability benefits in October, 2015.

**A. The Medical Evidence**

### Dr. Donald Goldman

Dr. Donald Goldman, an orthopedic surgery and sports medicine physician, performed multiple examinations of Parrish. Parrish complained of "cervical spinal pain, lumbar spinal pain and paresthesias in her hands with radiation into her legs." ECF No. 38-16 at 92. Dr. Goldman concluded Parrish has a "cervical herniated disc C5-6," "cervical derangement and radiculopathy," "lumbar neural foraminal stenosis with spondylolisthesis L5-S1" and "lumbar L4-5 radiculopathy." ECF No. 38-23 at 102. Dr. Goldman believed the combination of Parrish's "cervical spine impairment, lumbar spine impairment, and right hand impairment prevented her from working in any type of employment which would require her to sit for more than three to four hours a day, walk for more than three hours, and her ability to push, pull, climb, carry, sit, or twist is extremely limited." ECF No. 38-16 at 97.

### Dr. Martin Torrents

Dr. Martin Torrents, Parrish's family doctor, completed a worksheet describing his clinical findings. *See* ECF No. 38-23 at 231-33. It is very difficult to

read Dr. Torrents' handwritten notations, but it is clear Dr. Torrents concluded Parrish had "no ability to work" based on her health conditions. *Id*. at 232. Later, Dr. Torrents subsequently changed his opinion and opined that Parrish could perform "sedentary work [] on a full-time basis (8 hours per day, 5 days per week)." ECF No. 38-22 at 225. After consulting with Parrish's lawyers, he retracted that conclusion, and opined that she was not capable of working at all. *Id*. at 26.

## Dr. Gina Marino

Dr. Gina Marino is a chiropractor and one of Parrish's treating physicians. She noted that Parrish's "condition progressively worsened as a result of her workload." ECF No. 38 at 184. Dr. Marino's "assessment [] included limited cervical and lumbar range of motion, muscle spasms, soft tissue swelling and pain on palpitation and mobilization of her neck, wrists, hands, and lower back." *Id*. This was the "result of [Parrish's] cervical herniated disc, cervical radiculopathy, lumbar foraminal stenosis, lumbar spondylolisthesis, lumbar radiculopathy and carpal tunnel syndrome." *Id*. Nevertheless, Dr. Marino concluded that Parrish was capable of performing "sedentary work" except that she could not use a computer for more than fifteen minutes at a time and could not lift, twist, bend, or carry more than 5 pounds for more than fifteen minutes. ECF No. 38-23 at 229.

### Dr. Jerrold Gorski

In 2015, an independent medical examination was performed by Dr. Jerrold Gorski, who is board certified in orthopedic surgery. He performed a physical examination and conducted a review of medical records. Dr. Gorski reported that Parrish complains of "consistent and constant tingling and numbness in both of her hands," "weakness of grip," "cranial headaches" involving "pain that travels down the neck" and goes "into both shoulders and both arms," and "constant, dull pain in the lower back, which travels down the left leg." ECF No. 38-22 at 69. Dr. Gorski found Parrish's subjective complaints credible. *Id*. at 73.

Dr. Gorski concluded that Parrish has (1) "paresthesias perhaps Raynaud's Syndrome that suggest[s] a diagnosis of unspecified autoimmune type disorder," (2) "evidence of an atypical bilateral carpal tunnel syndrome," (3) "evidence of mild to moderate degenerative changes in her cervical spine" and "underlying and congenital spondylolisthesis in the lumbar spine." *Id*. at 72. Dr. Gorski concluded that Parrish "is capable of working 8 hours per day and 40 hours per week with restrictions," and that she should avoid "repetitive use of her hands." *Id*. at 72-72.

### Dr. Frank Polanco

Dr. Frank Polanco is an occupational medicine physician who reviewed the medical evidence on Aetna's behalf and provided an extensive summary. He noted that Parrish has "neck, shoulder, back, and bilateral hand and arm pain." ECF No.

38-22 at 241. In his view, the medical records "reflect that the claimant has functional range of motion, mobility, gait and strength. … [and] [h]er persistent carpal tunnel is noted with ongoing symptoms that reasonably limits the use of her left hand." *Id*. at 244. Nevertheless, he concluded, "[t]here are no findings to support incapacitation or inability to perform full-time work within the restrictions noted." *Id*.

### Dr. Malcolm McPhee

Dr. Malcolm McPhee, who is board certified in physical medicine and rehabilitation, reviewed the medical evidence on behalf of Aetna, spoke to Dr. Goldman, and provided an extensive summary of the medical record. After summarizing the medical evidence, Dr. McPhee concluded that Parrish's health conditions "would not preclude sedentary work activity." *See* ECF No. 38-17 at 84.

### Dr. Christina Cusic

Dr. Christina Cusic is board certified in occupational medicine. Aetna obtained an independent peer review from her in September, 2016. Dr. Cusic agreed with the diagnoses of cervical and lumbar radiculopathy and carpal tunnel syndrome. She also "agree[d] that Ms. Parrish [was] physically functionally limited from 8/6/2015 through 9/12/2016, however not to the extent that she is completely unable to work in any capacity." ECF No. 38-12 at 81.

7

### Generally

The medical experts largely concluded that Parrish has cervical and lumbar conditions, carpal tunnel syndrome, and reported significant, chronic pain. The experts agreed that these health conditions would affect Parrish's movement and that, in particular, she had restricted movement in her hands. The dispute centered on the severity and effects of Parrish's health conditions. Drs. Goldman and Torrents concluded Parrish was unable to work in any occupation. In contrast, Drs. Marino, Gorski, Polanco, McPhee, and Cusic concluded she had the capability to perform sedentary work with restrictions.

## II. Conclusions of Law

### A. Standard of Review

This Court shall not disturb the administrator's conclusion unless it is arbitrary and capricious.[2] *See Hobson v. Metro. Life Ins. Co.,* 574 F.3d 75, 82 (2d Cir. 2009). "Under the arbitrary and capricious standard of review, [a court] may overturn an administrator's decision to deny ERISA benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Hobson*, 574 F.3d at 83 (internal citations omitted).

---

[2] Counsel for Parrish appears to have initially agreed that an arbitrary and capricious standard of review was appropriate. See ECF No. 37 at 14. Later, by letter, Parrish urged the Court to adopt a *de novo* standard of review. *See* ECF No. 43. Counsel's untimely letter brief failed to establish that Aetna engaged in "conduct parallel to Schuman and supporting the application of [de novo review] pursuant to *Halo* [*v. Yale Health Plans*, 819 F.3d 24 (2d Cir. 2016)]." *Id*. at 1.

"[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (internal quotation marks, alteration and citation omitted). In *Metropolitan Life Insurance Co. v. Glenn*, the Supreme Court held that a conflict of interest exists when "a plan administrator both evaluates claims for benefits and pays benefits claims." 554 U.S. 105, 112 (2008). The Court reaffirmed that such a conflict was a factor to be considered and explained its importance would vary from case to case. *Id*. The Second Circuit has added that "[n]o weight is given to a conflict in the absence of any evidence that the conflict actually affected the administrator's decision." *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 140 (2d Cir.2010).

### B. Aetna's Coverage Plan

Parrish challenges Aetna's determination that she did not submit sufficient proof of an inability to work at any reasonable occupation due to her medical conditions. Aetna's plan sets for the test for disability:

> From the date that you first become disabled and until monthly benefits are payable for 24 months you meet the test of disability on any day that:
>
> > You cannot perform the **material duties** of your **own occupation** solely because of an **illness, injury** or disability pregnancy-related condition; and

9

> Your earnings are 80% or less of your **adjusted predisability earnings.**
>
> *After the first 24 months of your disability* that monthly benefits are payable, you meet the plan's test of disability on any day that you are unable to work at any **reasonable occupation** solely because of an **illness, injury** or disabling pregnancy-related condition.

ECF No. 38 at 20 (emphasis in original). Reasonable occupation is defined as "any gainful activity: [f]or which you are, or may reasonably become, fitted by education, training, or experience; and [w]hich results in, or can be expected to result in, an income of more than 80% of your **adjusted predisability earnings.**" *Id*. at 36 (emphasis in original).

As discussed previously, Aetna paid benefits during the twenty-four-month period where the prevailing test of disability was based on Parrish's "own occupation." *See* ECF No. 36 at 5. To receive continued benefits, Parrish had to prove she was "unable to work at any reasonable occupation solely because of an illness [or] injury." *Id*.

### C. The Merits of Parrish's Claim

Parrish contends that Aetna has failed the "higher-than-marketplace quality standard[]" outlined in *Glenn*, 554 U.S. at 115, which requires administrators to discharge their duties solely in the interests of the participants and beneficiaries" of the plan. *See* 29 USCA § 1104(a)(1). Parrish's briefing also attacks Aetna's review as being biased due to a conflict of interest, based in part on the opinions of

10

medical experts that have been criticized by other courts, and based on inappropriate vocational review. *See* ECF No. 37 at 16-20.

      The Court is persuaded that Aetna's determination, which is based on the conclusions of Drs. Gorski, Polanco, and McPhee was reasonable, within its discretion, and supported by substantial evidence. *See*, *e.g.*, *Demirovic v. Bldg. Serv. 32 B-J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006) ("It was within the Fund's discretion to credit the opinions of Drs. Toriello and Brown over those of Demirovic's own physicians"). Many of Parrish's symptoms were self-reported and unsupported by objectively verifiable evidence. *See Testa v. Hartford Life Ins. Co.*, 483 F. App'x 595, 597 (2d Cir. 2012) (affirming insurance carrier's decision to terminate disability benefits where "virtually all of [claimant's] symptoms were self-reported and supported by little, if any, objectively verifiable evidence"); *see also* ECF No. 38-22 at 72 (finding Parrish "has subjective complaints" for which "it is quite difficult from an objective point of view to make a correlation or find positive findings").

      Parrish's claim is significantly undermined by the conclusions of experts she proffered who believe she can perform sedentary work. This was the opinion of Dr. Gina Marino, one of Parrish's treating physicians. *See* ECF No. 38-23 at 229. Another of Parrish's experts, Dr. Torrents, checked a box indicating that she was unable to work, later concluded she could perform sedentary work, then apparently

11

changed his opinion back after communicating with plaintiff's counsel. *Compare* ECF No. 38-22 at 225 *with Id*. at 26. This casts significant doubt on his conclusions. *See In re Lyondell Chem. Co.*, 567 B.R. 55, 95 (Bankr. S.D.N.Y. 2017), *aff'd*, 585 B.R. 41 (S.D.N.Y. 2018) (where experts "dramatically change their opinions for litigation purposes, it tests credibility to accept the litigation opinions"). Only Dr. Goldman consistently believed that Parrish could not perform sedentary work due to her medical conditions.

      Where an administrator's denial of benefits was reasonable and based on substantial evidence, the administrator need not defer to a treating physician's opinions. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician"); *see also Demirovic*, 467 F.3d at 212. This is especially true when the overwhelming consensus among the medical experts was that Parrish could engage in sedentary work.

      Parrish's arguments do not compel a different outcome. Even though Parrish was granted benefits by the Social Security administration, that does not change the Court's ultimate conclusion. *Hobson*, 574 F.3d at 92 (carrier's failure to consider social security disability determination did not "render[] its denial of [claimant's] LTD benefits claim arbitrary and capricious"). Parrish argues Aetna's claims processing procedures have been criticized by courts, but this argument is

12

unavailing where Aetna's conclusion was supported by substantial evidence. *Id*. at 83 ("Under the arbitrary and capricious standard of review, we may overturn an administrator's decision to deny ERISA benefits 'only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law. This scope of review is narrow'") (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).

The Court has carefully considered Parrish's argument that Aetna's inherent conflict of interest renders its ultimate decision defective. This argument also fails. Aetna's notes its financial underwriters do not advise or influence the claims department or appeal unit without respect to claims like those of Parrish. *See* ECF No. 42 at 15-17 (explaining Aetna's internal processes and discussing the company's response to interrogatories). Moreover, if Aetna's "dubious … history of biased claim administration" were one sided as counsel alleges, Aetna would not have reversed its prior decision and granted Parrish benefits during the twenty-four-month period where the test for disability was based on her "own occupation." ECF No. 37 at 14. Where an insurer takes "active steps to reduce potential bias and to promote accuracy," the conflict of interest is "less important (perhaps to the vanishing point)." *Glenn*, 554 U.S. at 117. Therefore, in the absence of "evidence that the conflict actually affected the administrator's decision," it is appropriate to

13

discount any conflict that may have existed. *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 363 (E.D.N.Y. 2013) (quoting *Durakovic*, 609 F.3d at 140).

The Court's job is to assure that Aetna's "ultimate eligibility decision was not so lacking in 'reason, unsupported by substantial evidence or erroneous as a matter of law' as to have been made arbitrarily and capriciously." *Kruk v. Metro. Life Ins. Co., Inc.,* 567 Fed. Appx. 17, 19 (2d Cir. 2014) (summary order) (quoting *Miles v. Principal Life Ins. Co.,* 720 F.3d 472, 485-86 (2d Cir. 2013)). Here, Aetna's determination was not unreasonable, erroneous as a matter of law, or unsupported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court cannot conclude Aetna's decision to deny plaintiff's disability benefits was arbitrary and capricious. Aetna's motion for judgment on the administrative record is GRANTED.

**SO ORDERED.**

                                                                 /S/ Frederic Block_____
                                                                 FREDERIC BLOCK
                                                                 Senior United States District Judge

Brooklyn, New York
April 21, 2021